United States District Court
Southern District of Texas
**ENTERED**
March 13, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | CRIMINAL ACTION NO. H-17-669-1 |
| v. | § | |
| | § | CIVIL ACTION NO. 4:22-cv-205 |
| JULIA ANN POFF | § | |

## MEMORANDUM OPINION AND ORDER

Defendant, Julia Ann Poff, a/k/a Julia Gottselig Poff, a federal prisoner proceeding *pro se*, filed a motion to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255. (Docket Entry No. 161.)  The Government filed a motion for summary judgment (Docket Entry No. 224), to which defendant filed a cross-motion for summary judgment (Docket Entry No. 236).  During the interim, defendant filed numerous motions and appeals seeking various forms of relief, all of which were denied.

Having considered the section 2255 motion, the motion and cross-motion for summary judgment, the record, and the applicable law, the Court **GRANTS** the Government's motion for summary judgment, **DENIES** the cross-motion, and **DISMISSES** the section 2255 motion for the reasons that follow.

### I.  BACKGROUND AND CLAIMS

On July 1, 2019, defendant pleaded guilty pursuant to a written plea agreement to one count of transporting explosives with the intent to kill, injure, and intimidate, in violation of 18 U.S.C. §§ 844(d), based on her mailing an improvised explosive device to then-President Barack Obama.  The Court sentenced her on November 18, 2019, to a 120-month term of

Case 4:22-cv-00205   Document 3   Filed on 03/10/23 in TXSD   Page 2 of 27

imprisonment and ordered her to pay $9,700.00 in restitution.[1]  Defendant appealed her

conviction, but the United States Court of Appeals for the Fifth Circuit dismissed the appeal

as frivolous on November 23, 2020.  The United States Supreme Court denied defendant's

petition for a writ of certiorari on June 14, 2021.

Defendant filed this section 2255 motion on January 7, 2022, claiming that trial

counsel was ineffective at the pre-plea stage in (1) failing to challenge the indictment, (2)

failing to appeal the district court's denial of bail, and (3) failing to investigate the case.

Defendant further claims that trial counsel was ineffective at the plea and sentencing stages

in (4) failing to file a motion to withdraw the guilty plea and (5) not challenging the evidence

at sentencing.  Defendant contends that these and other errors require the Court to grant relief

and set aside her conviction and sentence.

## II.  LEGAL STANDARDS

A.     Section 2255

Generally, there are four grounds upon which a defendant may move to vacate, set

aside, or correct his sentence pursuant to section 2255:  (1) the imposition of a sentence in

violation of the Constitution or the laws of the United States; (2) a lack of jurisdiction of the

district court that imposed the sentence; (3) the imposition of a sentence in excess of the

maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack.

---

[1]The Honorable Vanessa D. Gilmore presided over the plea and sentencing hearings.  The case was reassigned to the undersigned district judge on January 18, 2022, following Judge Gilmore's retirement.

2

28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Section 2255 is an extraordinary measure, and cannot be used for errors that are not constitutional or jurisdictional if those errors could have been raised on direct appeal. *United States v. Stumpf*, 900 F.2d 842, 845 (5th Cir. 1990). If the error is not of constitutional or jurisdictional magnitude, the movant must show the error could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

The pleadings of a *pro se* prisoner are reviewed under a less stringent standard than those drafted by an attorney, and are provided a liberal construction. *Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, a *pro se* litigant is still required to provide sufficient facts to support his claims, and "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993). Accordingly, "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertion on a critical issue in his *pro se* petition . . . to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

B.     Effective Assistance of Counsel

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that

the deficient performance prejudiced his or her defense.  *Strickland* at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally sufficient.  *Id*. at 696.

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Id*. at 689.  To establish prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors.  *Id*. at 695–96.

Moreover, "[t]he likelihood of a different result must be substantial, not just conceivable," *Harrington v. Richter*, 562 U.S. 86, 112 (2011), and a movant must prove that counsel's errors "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 686).  Judicial scrutiny of this type of claim must be highly deferential and the defendant must overcome a strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.  Conclusory allegations of deficient performance and prejudice are not sufficient to meet the *Strickland* test.  *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).

4

When a defendant challenges a guilty plea based on ineffective assistance of counsel, the "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To satisfy this requirement, the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695–96. In this analysis, a defendant's sworn statements made to the Court when a guilty plea is entered carry a strong presumption of verity, and the "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

The Fifth Circuit has held that because a guilty plea necessarily "admits all the elements of a formal criminal charge," it "waives all non-jurisdictional defects in the proceedings against a defendant." *Barrientos v. United States*, 668 F.2d 838, 842 (5th Cir. 1982); *see also Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.").

5

### III.  INEFFECTIVE ASSISTANCE OF PRE-PLEA COUNSEL

A.    <u>Failure to appeal denial of bail</u>

Plaintiff argues that pre-plea counsel was ineffective in failing to appeal the denial of her release on pretrial bond.  Because defendant stands convicted and sentenced, her complaints regarding denial of pretrial bail are moot at this juncture.  Her claim does not challenge the constitutionality of her sentence and raises no cognizable ground for habeas relief.  Even assuming counsel could have successfully appealed the denial of bail, the claim was waived by defendant's written plea agreement and would not constitute a basis for setting aside her conviction and sentence under section 2255.   Defendant's conclusory assertions of being able to find beneficial evidence had she been released on bail are specious, unsupported in the record, and provide no basis for relief.

B.    <u>Failure to challenge the indictment</u>

Defendant further fails to show that pre-plea counsel was ineffective in not challenging the indictment.  According to defendant, the indictment was defective because it charged her with transporting explosives in interstate commerce with the knowledge or intent that those explosives would be used to "kill, injure, and intimidate."  The statute criminalizes transportation of explosives with the knowledge or intent that they will be used to "kill, injure, *or* intimidate." 18 U.S.C. § 844(d) (italics added). Defendant argues that the use of "and" in the indictment provided grounds for a motion to dismiss and counsel was ineffective for failing to file such a motion.

Defendant's guilty plea waived this argument.  The Fifth Circuit has repeatedly held that a guilty plea waives all non-jurisdictional defects in the proceedings, including all ineffective assistance of counsel claims except when the ineffectiveness is alleged to have rendered the guilty plea involuntary.  *See United States v. Palacios*, 928 F.3d 450, 455 (5th Cir. 2019); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983).  Defendant's claim against counsel is neither a "jurisdictional defect in the proceedings" nor an ineffective assistance claim related to the voluntariness of her guilty plea.  A guilty plea waives pre-plea ineffective assistance of counsel unless the movant can show that he would not have pleaded guilty but for counsel's deficient performance and that he would have insisted on going to trial.  *Hill*, 474 U.S. at 59 (1985); *United States v. Cavitt*, 550 F.3d 430, 441 (5th Cir. 2008).  Defendant does not meet this burden of proof.

Moreover, defendant fails to demonstrate that, had counsel objected to the indictment, the objection would have been granted and the result of her trial would have been different. *See United States v. Massey*, 849 F.3d 262, 264 (5th Cir. 2017) (rejecting challenge to the indictment where the charge used "and" but the statute used the word "or").  Regardless, defendant pleaded guilty to "transportation of explosives with the intent to kill, injure or intimidate," the precise language of the statute.

Defendant additionally argues that pre-plea counsel should have moved to dismiss the indictment because the homemade bombs she sent to government officials did not meet the federal definition of "destructive device" or the Texas Penal Code's definition of "IED."

7

However, the controlling definition is found in 18 U.S.C. § 844(j), which provides as follows:

> For the purposes of subsections (d), (e), (f), (g), (h) and (i) of this section and section 842(p), the term "explosive" means gunpowders, powders used for blasting, all forms of high explosives, blasting materials, fuzes (other than electrical circuit breakers), detonators, and other detonating agents, smokeless powders, other explosive or incendiary devices within the meaning of paragraph (5) of section 232 of this title, and any chemical compounds, mechanical mixture, or devices that contains any oxidizing and combustible units, or other ingredients, in such proportions, quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture, or device or any part thereof may cause an explosion.

18 U.S.C. § 844(j). Defendant does not argue, much less show, that had counsel objected to her homemade bombs as not meeting this definition, that the objection would have been granted. Defendant does not dispute the Government's argument that the bombs would have detonated given proper ignition.

Defendant fares no better in arguing that counsel should have moved to dismiss the superseding indictment that added charges for using a destructive device in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). Defendant proffers no applicable legal authority in support of her argument, and the Court finds none. Regardless, defendant shows no prejudice under *Strickland*, as the section 924(c) charges were dismissed as part of her written plea agreement after she pleaded guilty to violating 18 U.S.C. § 844(d).

Defendant fails to show deficient performance and actual prejudice under *Strickland* and her claim warrants no relief.

8

C.     Failure to investigate

Defendant's argument that counsel was ineffective in failing to investigate potential defenses to the charges against her were waived by her guilty plea.   Regardless, her speculative allegations of counsel's failures to investigate numerous potential witnesses are unsupported in the record and establish no causative connection between the alleged ineffectiveness and her guilty plea. *See Clarke v. Cain*, 85 F.3d 624 (5th Cir. 1996); *Murray v. Collins*, 981 F.2d 1255 (5th Cir. 1992); *Sayre v. Anderson*, 238 F.3d 631 (5th Cir. 2001). Section 2255 habeas relief is unwarranted under this claim.

**IV.   INEFFECTIVE ASSISTANCE OF PLEA/SENTENCING COUNSEL**

Defendant argues that trial counsel was ineffective during the plea and sentencing stages of the case.   The plea hearing record evinces the following relevant exchanges among the Court, defense counsel, and defendant:

> THE COURT:     Have you received a copy of the indictment; that is, the charges that are pending against you in this court?
>
> THE DEFENDANT:     Yes, Your Honor.
>
> THE COURT:     And did you get a chance to go over those charges with your lawyer, Mr. Saper?
>
> THE DEFENDANT:     Yes, Your Honor.
>
> THE COURT:     *Are you satisfied with the counsel and representation that your lawyers have provided to you?*
>
> THE DEFENDANT:     *Yes, Your Honor.*

THE COURT:          Do you need any additional time to speak with your
                    lawyers this morning before I take your plea?

THE DEFENDANT:          No, Your Honor.

THE COURT:          Mr. Saper, have you had sufficient time to investigate the
                    law and the facts concerning your client's case before
                    this Court?

MR. SAPER:          I have, Your Honor.

THE COURT:          Has she been able to cooperate with you in every way?

MR. SAPER:          She has, Your Honor.

THE COURT:          Do you believe that she understands the nature of the
                    charges pending against her?

THE DEFENDANT [*sic*]:  Yes, Your Honor.

THE COURT:          Do you believe that she is competent to enter a plea of
                    guilty?

THE DEFENDANT [*sic*]:  Yes, Your Honor.

THE COURT:          Do you know of any reason why she should not plead
                    guilty or of any meritorious defenses that she might
                    have?

MR. SAPER:          I do not, Your Honor.

(Docket Entry No. 114, pp. 7–8, emphasis added.) Following the Government's synopsis of

the plea agreement, defendant testified as follows:

THE COURT:          Are those the terms of your plea agreement as you
                    understand them?

THE DEFENDANT:          Yes, Your Honor.

THE COURT:        And has anybody made any different promise or
                  assurance to you of any kind?

THE DEFENDANT:        No, Your Honor.

THE COURT:        *Did anybody try to force you to plead guilty?*

THE DEFENDANT:        *No, Your Honor.*

*Id.*, p. 10, emphasis added.  As to the facts surrounding defendant's commission of the

charged offenses, the  plea hearing record reveals the following relevant exchanges:

THE COURT:        The charge to which you've indicated you wish to plead
                  guilty is under Count Seven of the second superseding
                  indictment, transportation of explosives with the intent to
                  kill, injure or intimidate, the elements of which are that
                  you transported or received or attempted to transport or
                  receive any explosive in interstate or foreign commerce
                  with the knowledge or intent that it would be used to kill,
                  injure, or intimidate any individual?

THE WITNESS [*sic*]:        Yes, Your Honor.

THE COURT:        *Do you understand what the government is claiming that
                  you have done to violate the law?*

THE DEFENDANT:        *Yes, Your Honor.*

THE COURT:        *Did you commit this crime?*

THE DEFENDANT:        *Yes, Your Honor.*

*Id.*, p. 14, emphasis added.

At the court's request, the Government then set forth the following factual basis in

support of the plea:

11

If this matter had gone to trial, the government would have proven beyond a reasonable doubt that on or about October 2nd and 3rd of 2016, Julia Poff mailed three packages from the Southern District of Texas to three separate recipients: the [P]resident of United States, the governor of the [S]tate of Texas, and the acting social security administrator.

Each of those packages contained a victim-activated, booby trapped, improvised explosive device containing explosive materials, otherwise known as a homemade bomb.  Count Seven of the second superseding indictment relates to the improvised explosive device sent to the [P]resident of the United States.

On October 6th, 2016, the U.S. Postal Service mail, flat rate box addressed to President Barack Obama and mailed through interstate commerce was intercepted at a White House mail handling facility at Bolling Air Force Base in the District of Columbia.

The package was opened at the mail handling facility and appeared to contain a bomb. The package and its contents were examined by an FBI explosives expert who determined it to be a victim-activated, booby trapped, improvised explosive device, otherwise known as a homemade bomb.

The FBI laboratory explosives unit also determined this device met the statutory definition of a destructive device. Numerous items within this box were examined and linked to Julia Poff or her husband, Billy Poff.

The outer U.S. postal box contained a taped address label which was printed on an ink jet type printer. Under the address label tape, a feline hair was located by the FBI crime laboratory. Testing conducted by the FBI laboratory revealed that this hair was microscopically consistent with the hairs taken from a cat named Ash who was owned and cared for by the Poff family at their residence, 1627 Dove Run in Brookshire, Texas.

The inner box contained the following items: a micro-USB cable box, a cellular phone, hobby fuse, matches, paper wadding, plastic sacks, sandpaper, and two 20-ounce Coke bottle caps, and they contained shot and powder, which the powder was pyrotechnics and smokeless powder.

Caitlyn Poff identified the phone that was in the box as her old cell phone which was last seen in the garage at that address in August and September of 2016.

The micro-USB box was determined to be distributed by Walgreens and had a product barcode of 49022 88472. FBI special agents learned that Julia Poff used her bank debit card to purchase a micro-USB box with the same barcode. She also purchased two packs of Pall Mall Reds cigarettes and one Disney item in 2016.

The paper wadding was determined to be similar in composition to a shop paper towel. This wadding served as filler in the package to hold the various components in their proper places.

Five fingerprints were recovered from the plastic sacks, and they were identified as the defendant's husband's fingerprints.

FBI agents learned that Julia Poff had access to fireworks during her previous eight years of employment at fireworks stands and she would store fireworks at her residence. Julia Poff also had access to her husband's firearm reloading equipment.

The FBI forensic explosive expert determined the powder contained in the device was comprised of a mixture of pyrotechnics, which is used in large fireworks, and smokeless powder, which is used in ammunition reloading.

After examining the device, the FBI forensics explosives expert determined it was an explosive device and a destructive device that, in addition to the pyrotechnics composition and smokeless powder, included a hobby fuse, buckshot, and matches.

Thank you, Your Honor.

THE COURT:          Ms. Poff, you've heard the facts that the government has indicated it would be prepared to prove against you if this case were to proceed to trial. Having heard those facts, how do you now plead to the charges pending against you? Guilty or not guilty?

THE DEFENDANT:          Guilty.

13

THE COURT:      Are you ready to sign the plea agreement under oath at
                this time?

THE DEFENDANT:      Yes, Your Honor.

MR. IMPERATO:   Your Honor, the plea agreement has been executed by all
                the parties.

*Id.*, pp. 15–18. Defendant's declarations made under oath in open court carry a strong presumption of truth, forming a formidable barrier to relief in any subsequent collateral proceedings. *See Blackledge*, 431 U.S. at 73–74. "[A] defendant ordinarily will not be heard to refute her testimony given at a plea hearing while under oath." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998).

   In this context of a guilty plea, the prejudice prong of *Strickland* requires the prisoner to demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. 54; *United States v. Smith*, 844 F.2d 203, 209 (5th Cir. 1988). "The test is objective; it turns on what a reasonable person in the defendant's shoes would do." *Smith*, 844 F.2d at 209. "[A] petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

   A.   Failure to withdraw guilty plea

   Defendant asserts that counsel was ineffective in failing to move to withdraw her guilty plea. She states she asked counsel to file a motion to withdraw the plea several days

14

after she pleaded guilty and again after reviewing the PSR, but that counsel told her it was too late and "you don't want to do that." (Docket Entry No. 161, p. 35.)

Federal Rule of Criminal Procedure 11(d) provides, in relevant part, that a defendant may withdraw a plea after the court accepts the plea, but before it imposes sentence, if the defendant can show a fair and just reason for requesting the withdrawal. Under Federal Rule of Criminal Procedure 11(e), a defendant may not withdraw a guilty plea after the court imposes sentence; the plea may be set aside only on direct appeal or collateral attack.

Defendant fails to establish in the record a meritorious basis for withdrawing her plea. *See United States v. Carr*, 740 F.2d 339, 343–44 (5th Cir. 1984). Although she claims to have asked counsel to withdraw the plea after the plea hearing, she complains in her motion that the sentence imposed by the Court was more than what she had anticipated.[2] To the extent defendant changed her mind after pleading guilty, it did not support withdrawal of her plea. The purpose of withdrawal of a plea "is not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *Carr*, 740 F.2d at 345. Defendant fails to show

---

[2]Defendant asserts that, prior to the plea hearing, trial counsel said her sentence "should be 18–46 months." (Docket Entry No. 161, p. 35.) However, the record shows that she knew counsel's estimate was not binding on the Court. At the plea hearing, defendant testified that she understood the maximum sentence in her case was ten years, that the sentence imposed by the Court might be different from any estimate her lawyer gave her, and that she could not withdraw her plea if the Court later imposed a sentence more severe than what she anticipated. (Docket Entry No. 114, pp. 9–12.) That she ultimately received a 120-month sentence provided no basis for withdrawing her plea under Federal Rule of Criminal Procedure 11.

15

that, had counsel moved to withdraw the plea at the time and for the reasons she requested, the motion would have been granted.

Defendant's dissatisfaction with her guilty plea would not have constituted a fair and just reason for requesting the withdrawal. Moreover, it was too late under Rule 11(e) for counsel to seek withdrawal of the plea once sentence had been imposed. No ineffective assistance of counsel is shown, and defendant's conclusory assertions are insufficient to preclude the granting of summary judgment against her.

B.    <u>Failure to challenge evidence at sentencing</u>

Defendant next argues that trial counsel was ineffective before or during sentencing by failing to object to the Government's use of a video showing that, had defendant's mail bombs ignited, they would have caused a significant explosion. She also argues that counsel failed to object to the Court's "*ex parte* communications at her bench about the cross referencing of attempted murder" and to the prosecutor's use of a "fake picture of an explosion." Defendant further complains that counsel was ineffective in failing to call any witnesses or argue that the Government breached the plea agreement when it opposed an acceptance-of-responsibility reduction.

These claims lack support in, or are refuted by, the record and have no merit. Trial counsel filed objections to the PSR, including objections to the Government's reliance on mock-up devices created by the FBI and the explosion photo. (Docket Entry No. 88.) Trial counsel emphasized that defendant's bombs would not have detonated because of a defective

ignition mechanism. *Id.* Counsel's objections were overruled. Defendant does not establish deficient performance and actual prejudice under *Strickland.*

Nor do the plea or sentencing records show that the Court had "*ex parte* communications" regarding the Sentencing Guidelines. To any extent defendant is referring to the Court's discussions with a probation officer, the discussions were permissible. *See Rosales-Mireles v. United States*, __ U.S. ___, 138 S. Ct. 1897, 1904 (2018) (noting that the United States Probation Office operates as an arm of the district court); *United States v. Christian*, 344 F. App'x 53, 55 (5th Cir. 2009) (referencing off-the-record conversation between probation officer and the court without criticism). Defendant fails to establish deficient performance or actual prejudice under *Strickland.*

Defendant next complains that trial counsel failed to call character witnesses at sentencing. Her claim is conclusory and unsupported in the record, and provides no basis for a finding of ineffective assistance. "Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative." *Sayre*, 238 F.3d at 635–36. Affidavits are generally needed to support an argument for witness testimony, and the proponent of such testimony must show not only that this testimony would have been favorable, but also that the witness would have testified. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). Moreover, defendant does not establish that the testimony of uncalled witnesses, had they testified, would have had a

meaningful impact on her sentencing. Defendant fails to establish deficient performance and prejudice under *Strickland*.

Defendant also complains that trial counsel failed to object to the Government's breach of the plea agreement. As grounds, she argues that the Government suggested she was not entitled to an acceptance-of-responsibility point reduction due to certain statements she made. This issue is more fully discussed below in the Court's analysis of defendant's cross-motion for summary judgment. However, defendant can show no deficient performance and prejudice, as she received the acceptance-of-responsibility point reduction.

Defendant fails to establish ineffective assistance of counsel under *Strickland*, and her section 2255 motion holds no merit.

## V.   CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant asserts in her cross-motion for summary judgment that she went into "explicit details" about her case in her habeas petition and that the Government failed to address several additional issues she had "mentioned." The Court cannot fault the Government for not addressing any additional issues defendant may have mentioned in her petition, as the issues were not delineated as habeas claims. Moreover, given the exorbitant degree of detail defendant sets forth in her pleadings as to matters well outside the record, it is unreasonably difficult to cull alleged background information from actual habeas claims. Nevertheless, the Court will address the fifty-five pages of additional issues and allegations presented by defendant in her cross-motion, as they have no merit. For the most part,

defendant raised these issues in her *pro se Anders* brief on direct appeal. The issues were rejected by the Fifth Circuit Court of Appeals in denying her appeal as frivolous. More importantly, the claims were waived by defendant's written plea agreement.

A.    Probable cause

Defendant's complaints regarding lack of probable cause to support her arrest and indictment are premised on false testimony she states was presented by witnesses at a pretrial detention hearing held in November 2017. To any extent defendant is attempting to assert a Fourth Amendment challenge to her indictment or arrest, the argument is one of record that should have been raised prior to trial or presented on direct appeal. To the extent defendant raised this issue in her *pro se Anders* brief on direct appeal, the Fifth Circuit Court of Appeals dismissed her appeal as frivolous. Regardless, the argument was waived by defendant's guilty plea. No basis for relief under section 2255 is shown.

B.    *Brady* claim

Defendant further complains that the Government's destructive testing of materials she used in making the homemade bombs constitutes a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). She also claims that the Government destroyed her cell phone that contained exculpatory evidence; she does not identify the alleged exculpatory evidence with any specificity. Again, these arguments of *Brady* violations are record arguments that should have been raised prior to trial or presented on direct appeal. To the extent defendant raised this issue in her *pro se Anders* brief on direct appeal, the Fifth Circuit Court of Appeals

dismissed her appeal as frivolous.  Regardless, the argument was waived by defendant's guilty plea.  No basis for relief under section 2255 is shown.

C.    False video

Defendant next contends that her due process rights were violated by the "fabricated and fraudulent video created by the Government" showing how her homemade bombs could have exploded.  Her disagreement with the content of the video is not evidence of fabrication.  To the extent defendant raised this issue in her *pro se Anders* brief on direct appeal, the Fifth Circuit Court of Appeals dismissed her appeal as frivolous.  Regardless, the argument was waived by her guilty plea.  No basis for relief under section 2255 is shown.

D.    Mental coercion and lack of understanding

Defendant also argues that her guilty plea was coerced and involuntary.  In support, she cites conflicts with prior attorneys, allegedly false and fabricated evidence put forth by the Government, "trauma" caused by the addition of her husband as a co-defendant, unexplained "threats" involving her children, lack of visitation with her youngest child after she pleaded not guilty, and inadequate pretrial medical care.  The record does not support the existence of all of these alleged events or show that they caused a coerced or involuntary. Moreover, defendant clearly testified at the plea hearing that she had not been threatened into pleading guilty.

Defendant states that, "Then after [she] had been diagnosed with several mental health issues she was coerced to plead guilty to one count even though she clearly did not

20

understand the consequences of that plea." (Docket Entry No. 236, p. 54.) These assertions are refuted by the record. The Court specifically inquired into defendant's mental health history at the plea hearing:

| | |
|---|---|
| THE COURT: | Have you ever been treated for any mental illness or addiction to narcotic drugs of any kind? |
| THE DEFENDANT: | Yes, Your Honor. |
| THE COURT: | Tell me about that. |
| THE DEFENDANT: | When I was in the service, I was raped; and I was diagnosed with borderline personality disorder. That's been it. I have never had any treatment for it. It just got me out of the service. |
| THE COURT: | I see. How long ago was that? |
| THE DEFENDANT: | 27 years ago. |

(Docket Entry No. 114, p. 4–5.) The Court then asked defendant whether she was "currently under the influence of any medication, alcoholic beverage, or narcotic drug of any kind." Defendant responded affirmatively, and listed several medications and vitamins she was taking for various physical ailments. When the Court noted that, "So I was listening to that list of medications. It doesn't sound like there were any narcotic drugs at all," defendant replied, "No, ma'am." *Id.*, pp. 5–6. Defendant proffered no other testimony as to mental health, mental coercion, or psychiatric issues. She expressly denied that anyone had threatened her into pleading guilty.

21

Defendant also claims she was unaware during the plea process that she could be ordered to pay restitution; this, too, is flatly belied by the plea record. Defendant acknowledged in her written plea agreement her understanding that "forfeiture, restitution, and fines are separate components of sentencing and are separate obligations." (Docket Entry No. 80, p. 10.) She further agreed in her written plea agreement to "pay full restitution to the victim(s) regardless of the count(s) of conviction," and that she "understands and agrees that the Court will determine the amount of restitution to fully compensate the victim(s)." *Id.* Defendant agreed that restitution imposed by the Court would be due and payable immediately and that she would not attempt to avoid or delay payment. *Id.* There is no support in the record for defendant's specious argument that "no one told her" she would have to pay restitution, or that the plea agreement language was "vague and ambiguous" as to restitution.

Defendant was not entitled to know prior to pleading guilty the amount of restitution she would need to pay, as such matters would be determined during post-sentencing investigations. The amount of requested restitution was addressed in the PSR, which trial counsel testified he reviewed with defendant. (Docket Entry No. 117, p. 2.) Defendant's current disagreement with the manner in which her restitution is being collected by prison officials during her incarceration does not constitute grounds for setting aside her conviction and sentence.

In short, defendant's claims of being "mentally coerced" into pleading guilty and of not understanding the consequences of her plea are unfounded in the record. To the extent defendant raised this issue in her *pro se Anders* brief on direct appeal, the Fifth Circuit Court of Appeals dismissed her appeal as frivolous.

E.   Denial of fair trial

Defendant argues she was denied a fair trial due to counsel's improper investigations and failures to file motions, by the Court's denial of her various motions, and by the Government's purported goal of keeping her in detention as punishment for not pleading guilty. These specious assertions are unsupported in the record, were waived by her guilty plea, and otherwise provide no basis for relief under section 2255. To the extent defendant raised this issue in her *pro se Anders* brief on direct appeal, the Fifth Circuit Court of Appeals dismissed her appeal as frivolous.

F.   Outrageous government conduct

Defendant argues that her criminal prosecution was wrought with outrageous conduct by the government from inception through sentencing. She provides no support for this conclusory claim beyond her questioning "whether this crime even happened," "was it just a scam bought by money," suggestions that her fraudulent Houston bankruptcy proceedings may have played a role, and lengthy innuendo as to "bad acts" by the Government. (Docket Entry No. 236, p. 37.)

None of this speculation is supported in the record.  Defendant pleaded guilty to the criminal offenses as charged, and her scattershot efforts here on collateral review to undo if not redo her entire prosecution warrant no relief.  To the extent defendant raised this issue in her *pro se Anders* brief on direct appeal, the Fifth Circuit Court of Appeals dismissed her appeal as frivolous.

### G.    Breach of plea agreement

Defendant correctly states that, as part of the plea agreement, the Government agreed at the plea hearing not to oppose a two-point reduction for acceptance of responsibility, along with the additional one point under 3E1.1(b)(1).  She incorrectly states that the Government breached this agreement prior to sentencing.  Even as late as the sentencing hearing, after she had pleaded guilty, defendant continued professing her innocence:

> THE DEFENDANT:    Your Honor, I don't know what we're doing here. I wish I did because we had nothing to do with this.
>
> THE COURT:    Oh, and now –
>
> THE DEFENDANT:    *I don't know what to say. I mean, I don't know what to say. We did not do this.*
>
> THE COURT:    Talk to your client. Tell her to stop talking about that. She's getting ready to lose her three points

(Docket Entry No. 117, p. 21, emphasis added.)  Following the Court's comment, defendant immediately changed tack:

> All I can say is I'm sorry. I'm sorry to the people that I've hurt. I'm sorry to, as I was saying, again I sincerely apologize to governor Greg Abbott, the former President Barack Obama, and acting commissioner of Social Security, Carolyn Colvin, for what has happened.
>
> I made a bad choice and have had to suffer the consequences along with my family for the last 37 months for doing so.
>
> I just ask this Court to accept my apology.

*Id.*

The written plea agreement capped the potential sentence at a 120-month term of incarceration, which was the sentence imposed by this Court. Defendant's assertion that the Government breached the plea agreement is unsupported in the record, and provides no basis for habeas relief. To the extent defendant raised this issue in her *pro se Anders* brief on direct appeal, the Fifth Circuit Court of Appeals dismissed her appeal as frivolous. Regardless, defendant received her reduction for acceptance of responsibility at sentencing, and she makes no argument to the contrary.

H.   Sentencing Guidelines

Although unclear, defendant appears to argue that the Sentencing Guidelines were improperly applied in her case because of a guideline's cross-reference to attempted murder. Her assertion is unsupported in the record or by relevant authority. To the extent defendant raised this issue in her *pro se Anders* brief on direct appeal, the Fifth Circuit Court of Appeals dismissed her appeal as frivolous.

This argument was waived by defendant's written plea agreement. Regardless, challenges to technical applications of the Sentencing Guidelines are not cognizable federal

habeas claims, and no basis for habeas relief is shown. *See, e.g., United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Section 2255 motions may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed. Misapplications of the Sentencing Guidelines fall into neither category and hence are not cognizable in § 2255 motions." *Id.* (cleaned up).

I.   <u>Actual Innocence</u>

Defendant pleaded guilty to the charged offense and cannot claim actual innocence at this juncture. Even so, her protestations of innocence provide no basis for habeas relief. To the extent defendant is attempting to raise a free-standing claim for actual innocence, no cognizable federal habeas claim is presented. *In re Swearingen*, 556 F.3d 344, 348 (5th Cir. 2009).

To the extent defendant claims actual innocence as a gateway claim to surmount any procedurally defaulted claims, her conclusory assertions of actual innocence and disagreements with the credibility of the Government's evidence fail to satisfy her burden of proof. As explained by the Supreme Court, "tenable actual-innocence gateway pleas are rare: A petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggen v. Perkins*, 569 U.S. 383, 386 (2013) (cleaned up); *Schlup v. Delo*, 513 U.S. 298, 324, 329 (1995) (holding that a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new

reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."). Defendant does not satisfy this burden of proof. Habeas relief is not warranted under defendant's assertions of actual innocence.

## VI. CUMULATIVE ERROR

Defendant argues that, even if a single instance of constitutional error warrants no relief, the cumulative effect of all of the errors in her case requires the Court to set aside her conviction and sentence.

Because defendant has not met her burden of proof as to even a single instance of constitutional error, there are no constitutional errors to cumulate.

## VII. CONCLUSION

For the above reasons, the Government's motion for summary judgment (Docket Entry No. 224) is **GRANTED,** and defendant's cross-motion (Docket Entry No. 236) is **DENIED.**  Defendant's motion to vacate, set aside, or correct her sentence (Docket Entry No. 161) is **DISMISSED WITH PREJUDICE.**  A certificate of appealability is **DENIED.** The related civil action in C.A. No. 4:22-cv-205 (S.D. Tex.) is **ORDERED CLOSED.**

Signed at Houston, Texas, on this the _10_ day of March, 2023.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

27